UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SHARON BROWN, o/b/o
KYLE BROWN,

        Plaintiff,

vs.                          Case No.  3:06-cv-379-J-33MCR

MICHAEL J. ASTRUE,
Commissioner of Social Security,[1]

        Defendant.

_____/

## REPORT AND RECOMMENDATION[2]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative

decision denying her application on behalf of her son for Social Security benefits.  The

Court has reviewed the record, the briefs, and the applicable law.  For the reasons set

forth herein, it is recommended the Commissioner's decision be **REVERSED** and

**REMANDED** for proceedings not inconsistent with this opinion.

## I.    PROCEDURAL HISTORY

On February 14, 2003, Plaintiff protectively filed an application on behalf of her

son, Kyle Brown ("Claimant"), for Supplemental Security Income ("SSI").  (Tr. 46).  The

---

[1] Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social Security Administration.  See Fed. R. Civ. P. 25(d)(1).

[2] Specific written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document.  Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

Social Security Administration ("SSA") disapproved her claim initially and on reconsideration.  (Tr. 37, 33).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (Tr. 32); the hearing took place on June 2, 2005.  (Tr. 186-212).  On July 20, 2005, the ALJ issued a ruling against Plaintiff.  (Tr. 12-24).  Plaintiff requested a review of the ALJ's decision (Tr. 7A-7B), but the Appeals Council denied her request on February 23, 2006, thus making the ALJ's July 20, 2005 decision the final decision of the Commissioner.  (Tr. 5).  Plaintiff timely filed a complaint with the District Court on April 27, 2006.  (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    <u>Basis of Claimed Disability</u>

Plaintiff alleges Claimant is disabled because of his limited ability to concentrate, stay on task, and focus, as well as his Attention Deficit Hyperactivity Disorder ("ADHD"), processing delays, possible dyslexia, and his limitations in processing auditory information.  (Tr. 55).

### B.    <u>Summary of Evidence Before the ALJ</u>

On the date of the hearing before the ALJ, Claimant was 16 years old, and had recently completed the ninth grade.  (Tr. 191-192).  Initially, Plaintiff claimed Claimant's disability onset date was October 1, 1999, but she later amended it to February 14, 2003 to coincide with the date she filed the SSI application.  (Tr. 188-189).

In 1999, when Claimant was 10 years old, he was "considered for retention in the third grade because of academic concerns."  (Tr. 123).  Because of his academic problems, as well as some behavioral problems, he was given numerous assessment

procedures.  (Tr. 121-122).  His 1999 assessment results pertaining to verbal IQ, performance IQ, full scale IQ, broad reading, and math calculation were all lower than his 1996 scores for the same assessments.  (Tr. 122).  His full scale IQ score was 77, as opposed to 85 in 1996, Id.; although, his other scores were higher or in line with his previous performance.  (Tr. 122-123).  Overall, Claimant "demonstrated . . . a borderline level of intellectual functioning."  (Tr.123).  Ultimately, Claimant was allowed to pass into the 4th grade, because "he appear[ed] to be making sufficient academic progress in relation to his intellectual capability and to be adjusted socially among his classmates." (Tr. 123).  There is evidence, however, that around this same time, Claimant may have had some social problems, as his school psychologist, Sheryl A. Brim, Ph. D., stated in a separate report that he "has been involved in bullying, threatening and hurting children." (Tr. 124).  Dr. Brim also stated "[Claimant's] mother may wish to seek medical evaluation of [Claimant's] behavior problems, in order to uncover their source."  Id.

In September of 1999, Plaintiff took Claimant for a psychiatric evaluation performed by Dr. Elias Sarkis of Alachua Family Psychiatry.  (Tr. 152, 155).  Dr. Sarkis diagnosed Claimant with ADHD and prescribed Claimant Pamelor. (Tr. 152).  By October, the medication had produced positive results, with Claimant reporting he had received "good marks at school for behavior," and Plaintiff reporting Claimant's teachers indicated Claimant's school work and behavior had improved.  (Tr. 156).  Dr. Sarkis assessed Claimant overall as having "Marked Improvement." Id.  Two months later, Dr. Sarkis again noted Plaintiff reported Claimant's grades had improved and he was demonstrating very good behavior in class. (Tr. 155).  Dr. Sarkis assessed Claimant overall as having "Notable Improvement."  Id.

3

Claimant's medical record is silent from December 1999 until February 2003, at which point Claimant returned to Dr. Sarkis requesting to restart his medication and citing bad grades. (Tr. 150). Evidently, Claimant was in jeopardy of failing seventh grade and was exhibiting diminished focus and concentration. Id. The record is unclear as to why Claimant had discontinued his medication, though there is a note by Kathy Noffsinger, A.R.N.P., indicating Claimant had suffered from "intolerance of medications." (Tr. 153). Dr. Sarkis complied with Claimant's request and placed him on Straterra, (Tr. 150A), after diagnosing him with ADHD and Borderline IQ (Tr. 150).

Approximately one month later, on March 26, 2003, Dr. Sarkis found Claimant was responding excellently to the medication; she noted improved concentration and focus and that Claimant's grades were improving. (Tr. 149-149A). On a follow up visit on May 28, 2003, Dr. Sarkis noted Claimant's focus and concentration were much improved, stating Claimant could sit still much longer - only getting up 1-2 times per day, as opposed to 12 times a day before starting the medication. (Tr. 148). Dr. Sarkis also emphasized Claimant's need to comply with his medication regimen. (Tr. 148A).

In May of 2003, Claimant underwent a psychological evaluation for the purpose of assisting in his educational placement and instructional programming.[3] (Tr. 112-114A). Evidently, there were continued concerns regarding Claimant's academic performance. (Tr. 112). Claimant's Differential Ability Scale test results indicated he was "functioning in the Borderline range of intelligence," and his reading, writing, and mathematics skills were "within the [d]eficient range, comparable to his estimated intelligence, and at a third

---

[3] Claimant was 15 years old at the time of the evaluation.

4

grade level." (Tr. 114). His visual-motor skills were average and higher than his estimated intelligence. Id. The test results showed Claimant had "no significant emotional or behavioral problems." (Tr. 114A). Claimant's math teacher, however, reported he "appears able to grasp math concepts[,] [but] is usually unwilling to complete tasks, drills and practice in a timely manner." Id.

On September 2, 2003, Claimant underwent a general intellectual evaluation completed by Linda Abeles, Ph. D., of Community Behavioral Services. (Tr. 169-170). According to Dr. Abeles's report, Claimant "was assessed to be functioning in the Borderline Range of Intelligence with a Full Scale IQ score of 70 (2nd percentile). . . ." (Tr. 169). A few days later, on September 5, 2003, Claimant again met with Dr. Sarkis, who reported "things [were] going well in school so far" for Claimant, and Claimant thought his focus and concentration were "really good." (Tr. 167). Dr. Sarkis opined Claimant's ADHD showed "Significant Improvement." (Tr. 167-168). Dr. Sarkis also noted Claimant had recently started the ninth grade[4], and all of his classes were exceptional/special education ("ESE") classes. (Tr. 167).

Later that month, on September 26, 2003, Dr. Janice Miller, a Clinical Psychologist, completed a Childhood Disability Evaluation based on Claimant's records.

---

[4] The Court notes Claimant's record is extremely confusing as to grade levels. School records indicate Claimant was in seventh grade from Fall 2002 - Spring 2003 at Bradford Middle School, and that Claimant failed seventh grade, thus repeating seventh grade from Fall 2003 - Spring 2004. (Tr. 118-119). To the contrary, Claimant's testimony and medical records indicate Claimant began ninth grade at Bradford High School in August 2003, but that he ultimately failed the ninth grade, thus repeating the ninth grade from Fall 2004 - Spring 2005. (Tr. 161-167, 194). When Claimant was asked what grades he had repeated, he stated the ninth grade, as opposed to seventh grade. (Tr. 192). Lastly, Claimant testified he had just begun tenth grade in June 2005 (Tr. 192) and a school board psychological report confirmed as much (Tr. 184), but the ALJ stated Claimant was in tenth grade from Fall 2004 to Spring 2005 (Tr. 15).

(Tr. 171-176).  She concluded Claimant's impairments did not meet, or medically or functionally equal, any of the impairments listed in Appendix 1 to Subpart P of the SSA Regulations No. 4.  (Tr. 171).  As part of her evaluation, Dr. Miller evaluated Claimant's degree of limitation in six functional domains: 1) Acquiring and Using Information; 2) Attending and Completing Tasks; 3) Interacting and Relating with Others; 4) Moving About and Manipulating Others; 5) Caring for Yourself; and 6) Health and Physical Well-Being.  (Tr. 173-76).  Dr. Miller found Claimant had "marked" limitations in domain 1, "less than marked limitations" in domains 2 and 3, and "no limitation" in domains 4, 5, and 6.  (Tr. 173, 175).

On December 3, 2003, a state agency psychologist conducted a second Childhood Disability Evaluation of Claimant and made consistent finding to those made by Dr. Miller.  (Tr. 179-81).  Like Dr. Miller, the state agency psychologist found Claimant's impairments did not meet or equal the listings.  (Tr. 177).  Also similar to Dr. Miller, the state agency psychologist found Claimant had "marked" limitations in domain 1, "less than marked" limitations in domain 2, and "no limitation" in domains 4,5, and 6. (Tr. 179, 181).  The only difference between the two evaluations was the state agency psychologist found Claimant had "no limitation" in domain 3, whereas Dr. Miller had found "less than marked" limitation.  (Tr. 173, 179).

Despite continuing to take his medication, Claimant's academic performance in the ninth grade was disappointing.  Ultimately, he failed the ninth grade, though in May 2004, Dr. Sarkis stated both Claimant's grades and FCAT scores were improving.  (Tr. 163).  Claimant continued to meet with Dr. Sarkis roughly every 4 months (with appointments in July 2004, November 2004, and March 2005), and in his report from

each appointment, Dr. Sarkis noted Claimant was doing well and improving

academically.  (Tr. 157-162).  Yet, on July 26, 2005, Claimant underwent a

psychoeducational evaluation involving numerous tests administered by Lee Ann

Lehman, MS. Ed., School Psychologist.  (Tr. 184-185B).  The tests revealed:

> When compared to others at his age level [Claimant's] academic skills and
> his ability to apply those skills are both within the very low range.  Math
> calculation skills are at grade level and commensurate with nonverbal
> ability.  Encoding skills are at beginning 3rd grade level and are 1.5
> standard deviations below his nonverbal ability.  Math reasoning skills are
> at the end 3rd grade level; reading comprehension skills are at beginning
> 4th grade level and are one standard deviation below his nonverbal ability.

(Tr. 185B).  According to Ms. Lehman, Claimant's "performance in reading and written

expression ha[d] changed little since his previous evaluation in 2003."  Id.

### C.   Summary of the ALJ's Decision

In order for an individual under the age of eighteen to be entitled to Supplemental

Security Income payments, a claimant must have "a medically determinable physical or

mental impairment, which results in marked and severe functional limitations, and . . .

which has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 1382c(a)(3)(C)(I); 20 C.F.R. § 416.906.  Under the applicable

regulations, the Commissioner employs a three-step evaluation process.  Wilson v Apfel,

179 F.3d 1276, 1277 n.1 (11th Cir. 1999).  First he must determine whether the claimant

is engaged in substantial gainful activity.  20 C.F.R. § 416.924(a); Wilson, 179 F.3d at

1277 n.1.   If yes, the claimant is not disabled, but if no, the second determination is

whether the claimant has a "severe" impairment or combination of impairments.  20

C.F.R. § 416.924(a); Wilson, 179 F.3d at 1277 n.1.  If the claimant has severe

impairment(s), at step three, the Commissioner must determine whether the impairment,

or combination of impairments, meets or is medically or functionally equal to an

impairment listed in Appendix 1 of 20 C.F.R. part 404 subpart P, and whether it

otherwise satisfies the twelve month duration requirement.  20 C.F.R. § 416.924(a);

Wilson, 179 F.3d at 1277 n.1.

A finding of medical equivalence means the claimant has an impairment, or

combination of impairments, which is equal in severity and duration to one of the listed

impairments.  20 C.F.R. § 416.926(a).  In order to functionally equal one of the listings, a

claimant must have "marked" limitations in at least two of the six functional domains, or

an "extreme" limitation in at least one domain.  20 C.F.R. § 416.926a(a).  Where each of

the three steps are satisfied, the claimant will be found disabled.  20 C.F.R. §§ 416.924-

416.926a; Wilson, 179 F.3d at 1277 n.1.

At the first step, the ALJ found Claimant had never engaged in substantial gainful

activity.  (Tr. 16).  At the second step, the ALJ found Claimant's learning disability,

ADHD, and borderline intellectual functioning constituted "severe" impairments.  Id.  In

determining if Claimant met or equaled a listing, the ALJ was heavily influenced by the

treatment records from Dr. Sarkis, which indicate Claimant's "ailments are amenable to

treatment and medications."  Id.  The ALJ also questioned the results of Claimant's most

recent IQ exam, which was the IQ exam on which Claimant scored the lowest of the

three times he took it - having scored 85 in 1996, 77 in 1999, and 70 in 2003.  Id.  The

ALJ was "persuaded that absent a head/brain trauma or serious illness, there is no

explanation or reason for the lower IQ scores on the most recent examination, except

possibly a reduced effort by [Claimant]."  Id.  Accordingly, the ALJ concluded Claimant

did not meet any of the listings.  Id.

8

The ALJ next determined Claimant did not have marked limitations in at least two functional domains; nor did Claimant have an extreme limitation in any domain. Id. Thus, the ALJ found Claimant's impairments did not functionally equal a listing. Id. Accordingly, the ALJ found Claimant "ha[d] not been under a disability at any time through the date of the decision. Id.

III.    THE STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837

9

(11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## IV.   ANALYSIS

Plaintiff argues one issue on appeal - that the ALJ erred by not finding Claimant meets listing 12.05(C).  Listing 12.05(C) is the third of four alternate subsections under section 12.05, Mental Retardation.  In order to qualify for one of the 12.05 subsections, a claimant must first satisfy the diagnostic description set forth in the introductory paragraph to section 12.05.  To satisfy the diagnostic description, a claimant must have: (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive behavior; and (3) manifested deficits in adaptive behavior before age 22.  Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. Part 404, Subpart P, Appendix 1 at § 12.05.  Contrary to Defendant's assertion, a claimant is not required to be diagnosed with "Mental Retardation" in order to satisfy these requirements.  (Doc. 10, p. 7).  Rather, in the Eleventh Circuit, the diagnostic description requirements are presumptively met if a claimant satisfies the two elements of 12.05(C): (1) a valid IQ score of 60 through 70, and (2) evidence of an additional mental or physical impairment. Hodges v. Barnhart  276 F.3d 1265, 1269 (11th Cir. 2001).

As to the first element of 12.05(C),  Claimant's most recent IQ exam placed his IQ at 70; however, the ALJ did not consider this to be a valid score because it was significantly lower than his previous scores (his 1996 score was 85 and his 1999 score was 77).  (Tr. 122, 169).  As previously stated, the ALJ was persuaded that "absent a head/brain trauma or serious illness, there is no explanation or reason for the lower IQ scores on the most recent examination, except possibly a reduced effort by [Claimant]."

(Tr. 16).  This analysis is flawed because the ALJ failed to adhere to the Social Security

Regulations, which provide:

> IQ test results obtained at age 16 or older should be viewed as a valid
> indication of the child's current status, provided they are compatible with
> the child's current behavior.  IQ test results obtained between ages 7 and
> 16 should be considered current for 4 years when the tested IQ is less
> than 40, and for 2 years when the IQ is 40 or above.

20 CFR Pt. 404, Subpt. P, App. 1, at § 112.00 D(10).  Claimant's 1996 and 1999 IQ

exams were taken when he was between the ages of 7 and 16, and he scored higher

than 40 on both of them.  Thus, under the regulations, Claimant's 1996 and 1999 test

results were not current when Claimant's most recent exam was taken in 2003.

Therefore, the ALJ erred when he determined "there is no explanation or reason for the

lower IQ scores."  (Tr. 16).  The Regulations clearly acknowledge children's scores may

change prior to the age of 16.  Because the ALJ erred in conclusively determining

Claimant's test results were not valid, the ALJ should reconsider Claimant's test results

on remand and shall determine whether Claimant meets the first element of 12.05(C).  If

necessary, the ALJ may order Claimant to undergo another IQ examination.

The second element of 12.05(C) requires: "a physical or other mental impairment

imposing an additional and significant work-related limitation of function."  20 C.F.R.

Part 404, Subpart P, Appendix 1 at § 12.05(C).  Plaintiff cites Edwards by Edwards v.

Heckler, 755 F.2d 1513, 1515 (11th Cir. 1985) for the proposition that a claimant fulfills

the second element of 12.05(C) when the claimant's impairments' effect on "a

claimant's ability to perform 'basic work activities' [are] more than slight or minimal . . .

but less than 'severe.'" (Doc 7, p. 15) (citing Edwards by Edwards, 755 F.2d at 1515).

Examples of impairments or combinations of impairments that have been found to

satisfy this second element include: a combination of exercise induced asthma and chronic obstructive lung disease, Edwards by Edwards, 755 F.2d at 1516; seizures, Edwards v. Heckler, 736 F.2d 625, 630 (11th Cir.1984); a combination of allergies and mild carpal tunnel syndrome, Davis v. Shalala, 985 F.2d 528, 533 (11th Cir. 1993); and a combination of scoliosis of the cervical spine, a generalized anxiety disorder, a depressive disorder, and a personality disorder, Vaughn v. Astrue, No. 05-G-1395-NW, 2007 WL 1932027, *3 (N.D. Ala. May 10, 2007).

The ALJ failed to determine whether Claimant's impairments fulfill the second element of 12.05(C), seemingly because he summarily found Claimant did not satisfy the first element of listing 12.05(C).  Defendant argues the ALJ determined Claimant's ADHD is "amenable to treatment and medications," (Tr. 16),  and as such, Claimant's ADHD is not disabling.  (Doc. 10, p. 10).  This finding, however, is not dispositive of this issue because an impairment need not in itself be disabling in order to satisfy the second element of 12.05(C); rather, its effects on a claimant's ability to perform "basic work activities" must merely be more than slight or minimal.  Edwards by Edwards, 755 F.2d at 1515.

In Edwards by Edwards, the Eleventh Circuit found the claimant's exercise induced asthma and chronic obstructive lung disease satisfied the second element, even though the record indicated he was "doing fairly well with current medications, controlling his exercise."  755 F.2d at 1516 (internal citations omitted).  In the instant case, Claimant was observed in May 2003 to be "off task" and often exhibiting unproductive and distracted behavior (Tr. 113); however, at that time Claimant had only been on his medications for a few months.  Since that time, Claimant's medical records

12

indicate continuous and significant improvement in Claimant's ADHD.  Therefore, upon remand, if the ALJ determines Claimant satisfies the first element of 12.05(C), he must then evaluate whether any of Claimant's impairments, or combination of impairments, impose an additional and significant work-related limitation of function on Claimant, as set forth in the second element of 12.05(C).

### V.    CONCLUSION

In sum, the ALJ discounted Claimant's lowest IQ score without sufficient rationale.  As a result, the ALJ never considered or discussed whether Claimant's impairments satisfied the second element of 12.05(C).  Accordingly, the ALJ's finding that Claimant did not meet a listed impairment was not based on substantial evidence.  On remand, the ALJ should, relying solely on the facts and applicable law, determine the validity of Claimant's most recent IQ score.

It should be noted that even if the ALJ accepts Claimant's valid IQ to be 70, the ALJ is not bound to conclude that Claimant meets the first element of 12.05(C), as a "valid IQ score is not conclusive of mental retardation when the IQ score is inconsistent with other evidence in the record about [a] claimant's daily activities." Outlaw v. Barnhart  197 Fed. Appx. 825, 827 (11th Cir. 2006) (citing Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir.1986)).  Thus, the ALJ should consider Claimant's current IQ score along with the other evidence of record.  If necessary, the ALJ may order Claimant to undergo another IQ examination.  If the ALJ finds Claimant's IQ to be 70 or below and finds the score consistent with the other evidence in the record about Claimant's daily activities, then the ALJ must next determine if any of Claimant's impairments meet the second element of 12.05(C).  Finally, if the ALJ finds any of Claimant's impairments, or

combination of impairments, do not meet 12.05(C) for any reason, then the ALJ must determine whether any of Claimant's impairments, or combination of impairments, medically or functionally equal any of the listings.[5]

For the foregoing reasons, the undersigned finds the ALJ's decision is not supported by substantial evidence and is not based upon the proper legal standards. Accordingly, it is hereby

**RECOMMENDED**:

The Commissioner's decision be **REVERSED AND REMANDED**.  On remand, the ALJ should be directed to further evaluate the evidence with respect to whether Claimant's impairments meet Listing 12.05(C).  If Claimant's impairments do not meet Listing 12.05(C), the ALJ should evaluate whether Plaintiff's impairments are medically or functionally equivalent to 12.05(C).  Finally, the ALJ may conduct any further proceedings he finds necessary in light of any new findings.

.

---

[5] Notably, the ALJ altogether failed to discuss medical equivalency in his Decision, and although he briefly analyzed functional equivalency, he misstated his rationale for finding no functional equivalency.  Specifically, the ALJ stated "the State agency psychologist concluded [Claimant] has less than marked functional limitations in all functional domains," (Tr. 16); however, in actuality the two state agency psychologists found Claimant was markedly limited in one domain.  To be functionally equivalent, the evidence must show Claimant had a "marked" limitation in at least two domains, or an "extreme limitation in at least one domain.  20 C.F.R. § 416.926a(a).

**DONE AND ENTERED** at Jacksonville, Florida, this __29th__ day of August, 2007.

_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Honorable Virginia M. Hernandez Covington
United States District Judge

15